## SHOOLMAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3499.

Circuit Court of Appeals, First Circuit.
Jan. 18, 1940.

Emmanuel Kurland, of Boston, Mass. (David Stoneman, of Boston, Mass., on the brief), for petitioner for review.

Lee A. Jackson, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for the Commissioner.

Before WILSON and MAGRUDER, Circuit Judges, and PETERS, District Judge.

PETERS, District Judge.

The petition brings up for review a decision of the United States Board of Tax Appeals sustaining the action of the Commissioner of Internal Revenue in disallowing a deduction for a loss on a mortgage of real estate, claimed by the petitioner in his income tax return for the year 1931.

The Commissioner held that the loss sustained by the taxpayer could not be deducted prior to 1932, on the facts shown, which, in substance, were that the petitioner, a dealer in real estate, owned a second mortgage on a 99-year ground leasehold in Los Angeles, which he foreclosed in 1928, and for convenience placed the title in the name of his secretary.

In 1931 the petitioner permitted a payment of $4,000, due October 15th on the principal of the first mortgage of the leasehold, as well as the interest and taxes, to be defaulted. On November 1, 1931, $516 received from fire and plate glass insurance was applied to payments under the lease, being the last payment made by the petitioner on obligations ahead of his mortgage.

Under the terms of the ground lease, the lessee's rights were to terminate on 60 days' notice of default. On December 12, 1931, the petitioner received such a notice and thereupon decided to abandon the property, telling his secretary that no more payments were to be made to save it, and directing her to sign any papers that might be required to release his interest and obviate the necessity of legal proceedings by the owners of the reversion, and to notify them to that effect. Apparently no such notice was given in 1931. On December 29 of that year, the petitioner received a letter from a bank as agent of the owners of the property stating that they proposed to institute repossession proceedings unless "immediate steps are taken to cure the existing default." The petitioner replied on January 9, 1932, by enclosing a copy of a letter from him to the underwriters of the first mortgage bonds, that letter being dated January 6, 1932, to the effect that the petitioner was quite willing to give any release that would be required to perfect the title.

The first notice of default under the terms of the 99-year lease was given the petitioner on February 10, 1932, followed by a second in May and by legal proceedings later by which, on October 13, 1932, the petitioner was finally divested of his title. At that time the sum of $941, insurance money, held by the bank as trustee for the owners of the reversion, was ordered to be paid on petitioner's debt.

Upon these facts the petitioner claims an abandonment of his interest in the property and the right to deduct his loss in the year 1931.

To sustain his position the taxpayer must bring his case within the provisions of the applicable statutes and regulations. Sec. 23 of Chap. 852 of the Revenue Act of 1928, 45 Stat. 791, 26 U.S.C.A. § 23, authorizes as deductions in the computation of income taxes, losses sustained during the taxable year and not compensated for by insurance or otherwise; and in explaining that Section, Article 171 of Treasury Regulations 74 provides that such losses "must usually be evidenced by closed and completed transactions."

■ As the income tax law, generally speaking, is only concerned with realized losses and gains, and as the Regulations contemplate as deductions from gross income only losses which are fixed by identifiable events, the petitioner must show some definite occurrence in 1931 which fixes the time of the loss—some identifiable event which settles the fact of a loss and, with reasonable certainty, the amount. United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120; Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010; Burnet v. Huff, 288 U.S. 156, 53 S.Ct. 330, 77 L.Ed. 670.

■ The only occurrence in 1931 pointed out by the petitioners as fixing the fact and time of the loss is a mental attitude, a conclusion arrived at by him that he would not put any more money into the property to save his investment and so informing his secretary, with the additional instructions—not carried out—that she could sign any papers necessary to release his interest and so inform the lessor. But this is not sufficient, under settled constructions of the statute and regulations. It does not appear upon what facts the taxpayer based his decision not to put any more money into the property. There is no evidence of the market value of the property, and nothing upon which a conclusion can be based that the property was worthless. The fact that the taxpayer informed his secretary of his conclusion does not take the circumstances from the category of a mere determination—a state of mind. The title being in the secretary's name such information simply put the agent in accord with her principal.

The provisions of the law as to bad debts are not involved. This is a question of depreciation in value of real estate where the loss is from a fall in market value not taken by a sale or transfer of title during the year in question. Weiss v. Wiener, 279 U.S. 333, 49 S.Ct. 337, 73 L.Ed. 720; Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200.

The Board of Tax Appeals has determined as facts that in 1931 there was no abandonment of the property and that "nothing definite occurred to demonstrate that a loss had been sustained." The record does not show that such finding should be disturbed.

The decision of the Board of Tax Appeals is affirmed.