NEIL J. O'BRIEN AND PATRICIA M. O'BRIEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 13505–79.     Filed July 27, 1981.

*Jimmy L. Heisz*, for the petitioners.
*Rebecca W. Wolfe*, for the respondent.

FEATHERSTON, *Judge*: Respondent determined a deficiency in the amount of $10,447.92 in petitioners' Federal income tax for 1976. The sole issue for decision is whether the loss on petitioner Neil J. O'Brien's withdrawal from a partnership was a capital or ordinary loss.

### FINDINGS OF FACT

Petitioners Neil J. O'Brien (petitioner) and Patricia M. O'Brien, husband and wife, were legal residents of Dallas

County, Tex., when they filed their petition. They timely filed a joint Federal income tax return for 1976.

On March 1, 1973, petitioner and others formed a joint venture known as the South Arlington Joint Venture (South Arlington). The purpose of the joint venture was to hold real estate for investment. Under the terms of the joint venture agreement, petitioner had a 10-percent share of the venture's profits, losses, and liabilities.

On March 1, 1973, South Arlington purchased a 213.423-acre tract of land in Tarrant County, Tex., from Gifford Touchstone, trustee, for $1,150,956.10. The consideration for the purchase included a $1,000,348.65 wraparound promissory note secured by a second vendor's lien and second lien deed of trust for the benefit of the holder of the note. The second lien note provided that recourse for the holders of the note was limited to the recovery of the property securing the note. The $1,000,348.65 promissory note "wrapped around" a note executed by Gifford Touchstone, trustee, in the amount of $915,663.05 payable to R. G. Watkins and Gussie W. Watkins and secured by a deed of trust to William L. Bondurant, trustee.

On May 1, 1975, the $915,663.05 note payable to R. G. and Gussie W. Watkins was replaced by two promissory notes payable to them. The first note, in the amount of $388,000, was secured by a deed of trust on 97 acres of South Arlington property. The second note, in the amount of $527,663.05, was secured by a deed of trust on 116.423 acres of property owned by South Arlington. On May 1, 1975, the $1,000,348.65 wraparound promissory note payable to Gifford Touchstone was also replaced by two promissory notes payable to Gifford Touchstone: one for $419,308 secured by a deed of trust on the 97 acres of South Arlington property and another note for $570,240.65 secured by a deed of trust on the 116.423 acres of South Arlington property. South Arlington's personal (as distinguished from nonrecourse) liability extended only to interest payments of $9,497.31 on the $419,308 note, and $12,915.95 on the $570,240.65 note. During 1976, South Arlington made a payment of $22,413.26 to satisfy this personal liability for interest. After this interest payment was made, neither the partnership nor any of the partners were

personally liable for the indebtedness outstanding against the property.

On December 3, 1976, petitioner sent a letter to the general partner of South Arlington stating that he abandoned his interest in the venture as of that date. The letter states:

I herewith abandon all of my right, title and interest in and to the South Arlington Joint Venture, effective this date.

At that time, South Arlington had nonrecourse liabilities of $989,549. The venture continued to be engaged in business after petitioner's withdrawal.

On their 1976 Federal income tax return, petitioners claimed an ordinary loss of $14,865.30 on the abandonment of his interest in South Arlington. Respondent determined that the loss was a capital loss rather than an ordinary one. The parties do not dispute the existence or amount of the loss but only its characterization.

## OPINION

Briefly summarized, the evidence shows that petitioner was a partner with a 10-percent interest in a joint venture or partnership which acquired real estate by giving nonrecourse notes secured by vendor's liens and deeds of trust. In 1976, petitioner sent a letter to the general partner stating, "I herewith abandon all of my right, title and interest" in the partnership and, in his income tax return for that year, claimed an ordinary loss deduction as a result of the abandonment of his partnership interest. Respondent determined that the loss was deductible only as a capital loss. Based on the interplay between sections 752(b),[1] 731(a)(2), and 741, we conclude that respondent's determination is correct.

The deeds of trust on the property owned by South Arlington secured nonrecourse liabilities. Neither South Arlington nor petitioner assumed any personal liability for the payment of the outstanding notes. All of the partners of South Arlington, including petitioner, are therefore deemed to share in the liabilities reflected by the notes in the determination of their bases for their partnership interests in the same proportion as

---

[1]All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise noted.

they shared the partnership profits. Sec. 752(c); sec. 1.752–1(e), Income Tax Regs.;[2] *Tufts v. Commissioner,* 70 T.C. 756, 770 (1978).

Section 752(b) provides that "Any decrease in a partner's share of the liabilities of a partnership * * * shall be considered as a distribution of money to the partner by the partnership." Section 731(a)(2)[3] provides, inter alia, that a partner shall not recognize a loss upon a distribution from a partnership except upon a distribution in liquidation of a partner's interest where no property other than money and certain other property is distributed. The section further provides that any such loss shall be considered as a loss from the sale or exchange of the partner's partnership interest. Finally, under section 741,[4] the loss on the sale or exchange of a partnership interest is considered as a loss on the sale or exchange of a capital asset.

When petitioner terminated his partnership interest by abandoning it, he was relieved of his full share of the partnership's nonrecourse liabilities. As a result of this "decrease" in liabilities, under section 752(b) petitioner is

---

[2]Sec. 1.752–1(e), Income Tax Regs., provides in part:

"where none of the partners have any personal liability with respect to a partnership liability (as in the case of a mortgage on real estate acquired by the partnership without the assumption by the partnership or any of the partners of any liability on the mortgage), then all partners, including limited partners, shall be considered as sharing such liability under section 752(c) in the same proportion as they share the profits. * * * "

[3]SEC. 731. EXTENT OF RECOGNITION OF GAIN OR LOSS ON DISTRIBUTION.

(a) PARTNERS.—In the case of a distribution by a partnership to a partner—

* * * * * * *

(2) loss shall not be recognized to such partner, except that upon, a distribution in liquidation of a partner's interest in a partnership where no property other than that described in subparagraph (A) or (B) is distributed to such partner, loss shall be recognized to the extent of the excess of the adjusted basis of such partner's interest in the partnership over the sum of—

(A) any money distributed, and

(B) the basis to the distributee, as determined under section 732, of any unrealized receivables (as defined in section 751(c)) and inventory (as defined in section 751(d)(2)). Any gain or loss recognized under this subsection shall be considered as gain or loss from the sale or exchange of the partnership interest of the distributee partner.

[4]SEC. 741. RECOGNITION AND CHARACTER OF GAIN OR LOSS ON SALE OR EXCHANGE.

In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items which have appreciated substantially in value).

considered to have received a distribution of money from South Arlington in the amount of his share of the partnership liabilities. Under section 731(a)(2), the deemed distribution liquidated his interest in the partnership and the resulting loss is considered as a loss from the sale or exchange of his partnership interest. Section 741 treats the loss on the sale or exchange of a partnership interest as a loss on the sale or exchange of a capital asset. Therefore, the loss incurred by petitioner is a capital loss rather than an ordinary loss. *Pollack v. Commissioner*, 69 T.C. 142, 146–147 (1977); *Pietz v. Commissioner*, 59 T.C. 207, 218 (1972).[5]

Petitioner maintains that capital loss treatment is not required by sections 752(b), 731(a)(2), and 741. Petitioner argues that he was not relieved of any partnership liabilities, that no distribution in liquidation occurred, and that an abandonment of a partnership interest is not a sale or exchange of that interest. Petitioner concludes, therefore, that the abandonment of the partnership interest gave rise to an ordinary loss under section 165.[6]

Petitioner's first argument is that his share of partnership liabilities was not decreased upon the abandonment of his interest and, therefore, he may not be considered to have received a "distribution" under section 752(b). He argues that, under Texas law, he remained liable for partnership debts and

---

[5]In 1 A. Willis, Partnership Taxation, sec. 26.02, p. 332 (1976), it is stated:

"A partner cannot hope to obtain an ordinary loss on abandonment of his partnership interest if the partnership has liabilities, and a share of such liabilities is included under section 752 in the adjusted basis of his partnership interest. For example, the equal ABC general partnership acquires real property subject to a nonrecourse mortgage. Partner A decides that the deal is economically unsound, so he withdraws from the partnership, receiving nothing from B and C for his interest. Partner A included, under section 752(a) and (c), in the basis of his partnership interest, an amount equal to his one-third share of the encumbrance on the property acquired by the partnership. When A withdrew from the partnership, there was a decrease in his share of partnership liabilities, and section 752(b) requires that a decrease be ' * * * considered as a distribution of money to the partner by the partnership.' By virtue of section 752(b), A is considered to have received money in liquidation of his interest. Under section 731(a), partner A realizes gain or loss, which ' * * * shall be considered as gain or loss from the sale or exchange of the partnership interest * * * .' Under section 741, A's gain or loss is capital gain or loss, except as otherwise provided in section 751."

[6]SEC. 165. LOSSES.

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

obligations after his partnership interest was terminated, and that therefore his abandonment did not relieve him of liabilities.

The parties have stipulated, however, that, when petitioner terminated his interest in the partnership, neither South Arlington nor any of the partners were personally liable for the debt outstanding against the property held by South Arlington. Rather, the debt on that property was entirely nonrecourse and secured only by the property itself. Petitioner had no personal liability with regard to that indebtedness before the termination of his partnership interest and obviously acquired none as a result of the termination. Notwithstanding petitioner's lack of personal liability for any part of this partnership indebtedness, as long as he continued to be a partner he was considered as sharing proportionately with the other partners in such indebtedness for the purpose of determining the adjusted basis of his partnership interest by reason, as pointed out above, of section 752(c), and section 1.752–1(e), Income Tax Regs. Petitioner's abandonment of his partnership interest resulted in a decrease in his share of the partnership liabilities within the meaning of section 752(b), not because he ever had personal liability under State law, but because he is no longer considered under the applicable Code provisions as sharing in the nonrecourse liabilities of the partnership.

Petitioner also contends that no distribution in liquidation occurred, and that therefore section 731 is inapplicable. Although it is true that petitioner did not receive an actual cash distribution, petitioner is "considered" by virtue of section 752(b) to have received a "distribution of money" when he was relieved of his share of the partnership's nonrecourse debts. Moreover, this "distribution" occurred upon the termination by abandonment of petitioner's partnership interest. Therefore, petitioner is deemed to have received this distribution in liquidation of his partnership interest.[7] Sec. 761(d); sec. 1.731–1(a)(2), Income Tax Regs.

Petitioner further argues that an abandonment does not

---

[7]Indeed, the 1976 return filed by the partnership shows that during the year, petitioner had "withdrawals and distributions" in the amount of $14,865.29 and, at the end of the year, his capital account stood at zero.

constitute a sale or exchange and that therefore the loss is an ordinary loss under section 165. It is clear, however, that as a result of the interplay between sections 752(b), 731(a)(2), and 741, described above, the loss suffered by petitioner is to be treated as a loss on the sale or exchange of a capital asset and thus is a capital loss, and not an ordinary loss. See sec. 165(f).

We add that in two recent cases this Court has held that in certain circumstances an abandonment under State law may be treated as a sale or exchange for Federal income tax purposes. See *Arkin v. Commissioner*, 76 T.C. 1048 (1981) (abandonment of interest in a land trust); *Freeland v. Commissioner*, 74 T.C. 970 (1980) (abandonment by a partnership of real property subject to an encumbrance). Those cases provide additional support for our holding that petitioner's loss was a capital loss. However, because our holding is based upon the explicit statutory provisions governing partnerships, we do not need to decide whether the abandonment of the partnership interest would constitute a sale or exchange without regard to those provisions.

Petitioner has cited three cases to support his contention that the loss occurring upon the abandonment of a partnership interest is an ordinary loss. See *Hutcheson v. Commissioner*, 17 T.C. 14 (1951); *Gannon v. Commissioner*, 16 T.C. 1134 (1951); *Zeeman v. United States*, 275 F. Supp. 235 (S.D. N.Y. 1967), affd. and remanded on other issues 395 F.2d 861 (2d Cir. 1968). In *Gannon v. Commissioner, supra*, and *Hutcheson v. Commissioner, supra*, a partner in a law firm, who withdrew from his partnership thereby forfeiting the sum he had paid for his interest in the firm, was accorded ordinary loss treatment of his investment. The Court held that the taxpayer in each case sustained a loss which was incurred in his business and not a loss from a sale or exchange. Those cases, however, are inapposite to the case before us. First, there is no suggestion in the facts of those cases that the withdrawing partners were relieved of nonrecourse or other partnership liabilities. Further, those cases were decided prior to the enactment of the Internal Revenue Code sections under which we have decided this case. See *Stilwell v. Commissioner*, 46 T.C. 247, 251–252 (1966). Consequently, they do not provide support for petitioner's contentions.

*Zeeman v. United States, supra*, also fails to provide support

for petitioner. In that case, the court specifically found that the taxpayer's partnership interest had become worthless during the taxable year. Moreover, the facts in *Zeeman* do not indicate that the partnership had nonrecourse liabilities in which the taxpayer no longer shared. In this case, our holding is based upon the fact that petitioner was deemed to have received a distribution in money due to the decrease in his share of the partnership's nonrecourse debt which occurred upon the termination of his partnership interest.

To reflect the foregoing,

*Decision will be entered for the respondent.*