HOWARD A. LANG, JR. and JANICE H. LANG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lang v. Commissioner
Docket No. 11618-79.
United States Tax Court
T.C. Memo 1982-170; 1982 Tax Ct. Memo LEXIS 576; 43 T.C.M. (CCH) 976; T.C.M. (RIA) 82170; April 1, 1982. Howard A. Lang, Jr., pro se. Marilyn S. Ames, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a $ 713.84 deficiency in petitioners' 1976 Federal income tax. After concessions, *578 the sole issue for decision is whether petitioners realized an ordinary loss with respect to the disposition of their interest in a tract of real estate. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Howard A. Lang, Jr. (hereinafter petitioner), and Janice H. Lang, husband and wife, resided in Houston, Texas, during the 1976 taxable year and at the time they filed their petition in this case. On April 18, 1973, petitioner, J. Thomas Bagby, Jr. (hereinafter Bagby), and Frank Horlock (hereinafter Horlock) purchased a parcel of real property from Opal R. James (hereinafter James) and C. C. Huang (hereinafter Huang). James and Huang deeded the property to Bagby, as trustee, who held the property in trust for himself, Horlock, and petitioner (hereinafter collectively referred to as the Group). On the date that the Group purchased the property, Bagby, acting on behalf of the Group, executed a nonrecourse promissory note payable to the order of James and Huang in the amount of $ 57,208.85. On November 6, 1973, the Group sold the property to "Stanley Lipman, Trustee" (hereinafter Lipman), who executed a wraparound note [1] to Bagby as trustee. *579 Lipman made several payments on the wraparound note and petitioner reported his share of the payments made in 1976 on his tax return as a long-term capital gain under the installment method pursuant to section 453. [2]
Sometime in 1976, Lipman defaulted on the wraparound note and the Group ceased making payments on the nonrecourse note given to James and Huang. On or about March 11, 1977, James's and Huang's attorney notified the Group that the property would be offered at a foreclosure sale on April 5, 1977. In accordance with such notification, the property was sold at a foreclosure sale on April 5, 1977. In computing petitioners' taxable income on their 1976 return, they claimed a $ 4,855 ordinary loss deduction with respect to the proprty. In the notice of deficiency, respondent determined that such loss was capital rather than ordinary. OPINION We must determine whether petitioner realized an ordinary loss in 1976 with *580 respect to the disposition of his interest in the property. The parties agree that the Group was a joint venture. Since Congress has included joint ventures within the definition of partnerships contained in section 761(a), petitioner may take into account, in determining his income tax, his distributive share of any losses incurred by the Group. Sec. 702(a). Moreover, the character of such losses shall be determined at the partnership level. Sec. 702(b); Podell v. Commissioner,55 T.C. 429 (1970). Petitioner argues that the Group's default on its nonrecourse note constituted an abandonment in 1976. Respondent, on the other hand, contends that no abandonment occurred in 1976. For reasons set forth below we hold for respondent. Section 165(a) provides a general rule that a taxpayer may deduct any loss "sustained during the taxable year and not compensated by insurance or otherwise." Although the amount of the allowable loss is dependent upon certain factors enumerated in section 165, any loss must be evidenced by a closed and completed transaction, fixed by identifiable events. Sec. 1.165-1(b), Income Tax Regs. On the record before us, however, we are *581 unable to find identifiable events which show that the Group incurred a loss with respect to the property in 1976. Petitioner argues that the Group's default on its nonrecourse note constituted an abandonment in 1976. We disagree. Although we know that sometime in 1976 the Group defaulted on the non-recourse note payable to James and Huang, the mere fact of a default does not necessarily give rise to a deductible loss. See Shoolman v. Commissioner,108 F. 2d 987 (1st Cir. 1940), affg. a Memorandum Opinion of this Court. Any number of reasons, including a shortage of funds, could explain why the Group defaulted on its note. "To establish an abandonment it is necessary that there be an intention to abandon and some act evidencing that intention, and the taxpayer must not only show the intention coupled with the act but must prove that the abandonment occurred in the tax year for which the deduction is claimed." Dezendorf v. Commissioner,312 F. 2d 95, 96 (5th Cir. 1963), affg. a Memorandum Opinion of this Court. On this record, petitioner has failed to establish that the Group even intended to abandon the property in 1976. Accordingly, respondent *582 properly disallowed petitioner's claimed ordinary loss deduction with respect to the property in 1976. [3]
While respondent properly disallowed petitioner's claimed ordinary loss deduction, we are unable to understand respondent's position that the Group realized a capital loss with respect to the property in 1976. The record contains no evidence of any event that occurred in 1976, which would give rise to a loss of any kind, capital or ordinary. Although the property was foreclosed in 1977, such a transaction has no relevance with respect to 1976, the year presently before us. [4] Respondent should have disallowed any loss for 1976, capital or ordinary, with respect to the property. However, since respondent has not asserted a claim for an increased deficiency, we uphold his deficiency determination. See sec. 6214(a). *583 To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. The record indicates that the amount of the wraparound note was $ 82,798.20, and that such note was not the entire amount of the purchase price paid by Lipman. ↩
2. Statutory references are to the Internal Revenue Code of 1954, as amended.↩
3. Even if we found that the Group abandoned its interest in the property in 1976, it does not necessarily follow that petitioner would be entitled to an ordinary loss. See O'Brien v. Commissioner,77 T.C. 113 (1981); Arkin v. Commissioner,76 T.C. 1048↩ (1981).
4. Respondent devoted several pages of his brief to the argument that a foreclosure occurred which have rise to a capital loss in 1976. See secs. 165(f), 1211, and 1212. Helvering v. Hammel,311 U.S. 504↩ (1941). The foreclosure, however, occurred in 1977, not 1976.